# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 20-1003V

| | |
|---|---|
| CARLOS DIAZ, | Chief Special Master Corcoran |
| Petitioner, | Filed: November 1, 2023 |
| v. | |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | |
| Respondent. | |

*Leigh Finfer, Muller Brazil, LLP, Dresher, PA, for Petitioner.*

*Bridget Corridon, U.S. Department of Justice, Washington, DC, for Respondent.*

### RULING ON ENTITLEMENT[1]

On August 12, 2020, Carlos Diaz filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that he suffered a shoulder injury related to vaccine administration ("SIRVA") resulting from an influenza ("flu") vaccine received on October 11, 2017. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

For the reasons discussed below, I find that record evidence preponderantly establishes that the vaccine at issue was likely administered in Petitioner's right arm, the

---

[1] Because this Ruling contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

1

onset of his shoulder pain began on the day of vaccine administration, and that Petitioner has satisfied the remaining requirements for entitlement.

### I.     Relevant Procedural History

Over a year after the case was activated, Respondent filed his report defending the case (ECF No. 25). Petitioner then filed additional evidence (ECF Nos. 29, 31), but Respondent maintained his objections (ECF No. 32). Following a status conference, Petitioner filed a motion for a ruling on the record, requesting a finding that his October 11, 2017 flu vaccine was administered in his right arm, and Respondent opposed (ECF Nos. 39, 40).

On October 4, 2023, I stated that I intended to rule on onset and entitlement in addition to the situs issue that had been briefed, and allowed the parties to file any additional evidence or briefing on these issues by October 20, 2023 (ECF No. 41). On October 18, 2023, Petitioner filed a brief in support of his motion for a ruling on the record requesting that I rule in his favor on entitlement (ECF No. 42). Respondent did not make any further filings by the October 20 deadline, or to date. The issues of the situs of vaccine administration, the onset of Petitioner's shoulder pain, and his entitlement to compensation are now ripe for resolution.

### II.    Factual Findings and Ruling on Entitlement
#### A. Legal Standards

Before compensation can be awarded under the Vaccine Act, a petitioner must demonstrate, by a preponderance of evidence, all matters required under Section 11(c)(1), including the factual circumstances surrounding his claim. Section 13(a)(1)(A). In making this determination, the special master or court should consider the record as a whole. Section 13(a)(1). Petitioner's allegations must be supported by medical records or by medical opinion. *Id.*

To resolve factual issues, the special master must weigh the evidence presented, which may include contemporaneous medical records and testimony. *See Burns v. Sec'y of Health & Human Servs.,* 3 F.3d 415, 417 (Fed. Cir. 1993) (explaining that a special master must decide what weight to give evidence including oral testimony and contemporaneous medical records). "Medical records, in general, warrant consideration

as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

To overcome the presumptive accuracy of medical records testimony, a petitioner may present testimony which is "consistent, clear, cogent, and compelling." *Sanchez v. Sec'y of Health & Human Servs.,* No. 11–685V, 2013 WL 1880825, at *3 (Fed. Cl. Spec. Mstr. Apr. 10, 2013) (citing *Blutstein v. Sec'y of Health & Human Servs.,* No. 90–2808V, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998)). The Federal Circuit has "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Human Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021) (explaining that a patient may not report every ailment, or a physician may enter information incorrectly or not record everything he or she observes).

In addition to requirements concerning the vaccination received, the duration and severity of petitioner's injury, and the lack of other award or settlement,[3] a petitioner must establish that he suffered an injury meeting the Table criteria, in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination he received. Section 11(c)(1)(C).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of a flu vaccine. 42 C.F. R. § 100.3(a)(XIV)(B). The criteria establishing a SIRVA under the accompanying Qualifications and Aids to Interpretation ("QAI") are as follows:

> Shoulder injury related to vaccine administration (SIRVA). SIRVA manifests as shoulder pain and limited range of motion occurring after the administration of a vaccine intended for intramuscular administration in the

---

[3] In summary, a petitioner must establish that he received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception; suffered the residual effects of his injury for more than six months, died from his injury, or underwent a surgical intervention during an inpatient hospitalization; and has not filed a civil suit or collected an award or settlement for her injury. Section 11(c)(1)(A)(B)(D)(E).

upper arm. These symptoms are thought to occur as a result of unintended injection of vaccine antigen or trauma from the needle into and around the underlying bursa of the shoulder resulting in an inflammatory reaction. SIRVA is caused by an injury to the musculoskeletal structures of the shoulder (e.g. tendons, ligaments, bursae, etc.). SIRVA is not a neurological injury and abnormalities on neurological examination or nerve conduction studies (NCS) and/or electromyographic (EMG) studies would not support SIRVA as a diagnosis (even if the condition causing the neurological abnormality is not known). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:

(i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;

(ii) Pain occurs within the specified time-frame;

(iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and

(iv) No other condition or abnormality is present that would explain the patient's symptoms (*e.g.* NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id.*

### B. Relevant Factual History

This ruling contains only a brief overview of facts relating to the situs of vaccine administration, the onset of Petitioner's symptoms, and Petitioner's entitlement to compensation.

1. **Medical Records**

    a. **Vaccination Records**

On October 11, 2017, Petitioner received an intramuscular flu vaccine at a CVS Pharmacy in Enfield, Connecticut. Exs. 1 at 3-4; 13 at 2; 14 at 1-2; 15 at 1-3. Petitioner has filed four vaccine administration records, all of which confirm the date of vaccination. Exhibits 1, 13, 14, and 15. However, two of the records state that the vaccine was administered in Petitioner's *left* deltoid (Exs. 1 and 13), while two have handwritten alterations suggesting instead that it was administered in his *right* (Exs. 14 and 15) – which he alleges. Exhibits 14 and 15 also have handwritten alterations suggesting that the vaccine may have been administered by a different person than stated on Exhibits 1 and 13.

Exhibits 1 and 13 are both tabular computer printouts of vaccine administration information that appear to have been obtained through a database or spreadsheet query.[4] Exhibit 1, which is certified by a CVS records custodian, states that the flu vaccine was administered in Petitioner's left deltoid by Christy LaPlante. Ex. 1 at 3-4. The CM/ECF docket text accompanying the filing of Exhibit 13 states that it is the vaccine record obtained pursuant to a subpoena (ECF No. 29-3) (labeled "Exhibit 13 – VAR Pursuant to subpoena"). Exhibit 13 also states that the flu vaccine was administered in Petitioner's left deltoid by Christy LaPlante. Ex. 13 at 2.

Exhibits 14 and 15, on the other hand, are the vaccine consent and administration record - a form that has Petitioner's name, address, and date of birth typed, with screening questions that were answered by hand. Both also have typed information about the vaccine including the administration date, the name, manufacturer, lot number, and expiration date of the vaccine, the route and situs, and the name of the administering immunizer. Exs. 14, 15. The typed information on the forms states that the vaccine was administered in Petitioner's left deltoid by "Christy LaPlante, Intern." Exs. 14 at 2; 15 at 3. However, on both Exhibits 14 and 15, "Left Deltoid" is crossed off by hand and "Right" is handwritten above it. *Id.* Also on both Exhibits 14 and 15, the name of Ms. LaPlante is crossed off and "Kososki Rph" is handwritten below. *Id.* Both are signed by hand by the administering immunizer; however the signature is illegible. *Id.* Both are also signed by hand by Petitioner. *Id.* Additionally, Exhibit 14 has the word "Copy" handwritten in green

---

[4] Exhibits 1 and 13 each have a legend at the top with the terms a "Request Nbr," "Run Date," and stating the dates searched. Exs. 1 at 3; 13 at 2.

diagonally across both pages; Exhibits 14 and 15 otherwise appear to be virtually identical to one another. Ex. 14 at 1-2.

### b. Post-vaccination Medical Records

Over three months after vaccination, on January 22, 2018, Petitioner saw nurse practitioner ("NP") Michelle Allyn. Ex. 3 at 22. Petitioner reported that he had right upper arm pain that had begun after a flu shot in October. *Id.* He described the pain as a sharp, stabbing pain, at a level of eight out of ten. *Id.* On examination, his right lateral deltoid was tender, and testing of his range of motion was limited due to pain. *Id.* at 23. He had limited right shoulder active range of motion in forward flexion and arm elevation, with pain at 45 degrees. *Id.* His right shoulder active elevation/abduction was 45 degrees and painful. *Id.* He had negative impingement signs on both shoulders. *Id.* Petitioner was assessed with right shoulder pain, and sent for an ultrasound of his rotator cuff to determine if there was any injury from the flu shot. *Id.* NP Allyn explained that it "may be coincidental that [Petitioner] received the shot in this arm and is having this pain in the right arm." *Id.*

A week later (January 29, 2018), Petitioner underwent a right shoulder ultrasound. Ex. 4 at 22. The ultrasound revealed possible tendinosis or tendinopathy of the supraspinatus tendon, with an MRI advised for a more sensitive evaluation. *Id.* There was no evidence of fluid collection or joint effusion. *Id.*

The following week, on February 5, 2018, Petitioner saw orthopedist Dr. James Mazzara. Ex. 3 at 112. Petitioner told Dr. Mazzara that he had right shoulder pain that began on October 11, 2017 after a flu shot. *Id.* The pain had gradually and progressively worsened, and was worse with forward elevation. *Id.* at 112-13. The pain ranged up to seven or eight out of ten. *Id.* at 113. He now had some stiffness and aching in his shoulder. *Id.* Dr. Mazzara determined that Petitioner had impingement syndrome of the right shoulder with a glenohumeral internal rotation deficit. *Id.* He recommended a steroid injection, but Petitioner wanted to try oral anti-inflammatory medication instead. *Id.* Dr. Mazzara recommended home exercises and formal physical therapy ("PT"). *Id.*

Four days later (February 9, 2018), Petitioner underwent a PT initial evaluation for his right shoulder. Ex. 5 at 57. The record from this evaluation has an injury date of October 11, 2017, with the onset of pain occurring after a flu shot. *Id.* Petitioner's pain ranged between five and seven out of ten. *Id.* Petitioner continued PT through December

10, 2018. Ex. 5 at 21-60. Petitioner continued to treat with an orthopedist in 2018-19, ultimately undergoing right shoulder surgery in April 2019. Exs. 3 at 83-95; 7 at 31-33. After surgery, he completed another round of PT. Ex. 5 at 3-19.

### 2. Affidavits

Petitioner has submitted two affidavits and two declarations in support of his claim. Exs. 8, 9, 12. Petitioner states that he received the flu vaccine in his right shoulder. Ex. 8 at ¶ 2. The vaccine was administered by pharmacist Michelle Kososki, who he knows because he works at Target Optical next to CVS. Ex. 16 at ¶ 2. Michelle asked which arm he preferred, and he chose the right arm. *Id.* at ¶ 3. She approached from behind and administered the vaccine in his right shoulder. *Id.* He recalled it being administered too high and at an awkward angle. *Id.*

Petitioner purports to have experienced immediate pain and discomfort in his right arm. Ex. 8 at ¶ 4. About a week after his vaccination, he walked next door to express his concerns to the pharmacist. *Id.* She told him that some people have residual soreness for longer periods of time, but the discomfort would eventually subside. *Id.* About a month after vaccination, he consulted a doctor at his workplace about his continued right arm pain. *Id.* at ¶ 5. The doctor told him that his father had a similar problem, and the pain took a long time to recede. *Id.*

By December 2017, the pain in Petitioner's right arm and shoulder had "worsened significantly," and he realized this was not a normal reaction to a vaccine. Ex. 8 at ¶ 6. The pain became unbearable, and he was unable to brush his hair, perform tasks at work, or change an oil filter in his car. *Id.*

Petitioner stated that he went to CVS in person to request a copy of his vaccine record. Ex. 16 at ¶ 4. A male pharmacist gave him the document that was filed as Exhibit 14, with the word "copy" written across both pages. *Id.* Petitioner states, "Michelle had crossed out the words 'left deltoid,' written in the word 'right,' and signed her name." *Id.* He returned to CVS on March 10, 2022 to request the original copy of his vaccine consent form. *Id.* at ¶ 5. He was given the same document, this time without the word "copy" written across the pages. *Id.*

Petitioner submitted an affidavit from Marangelis Diaz, his wife. Ex. 9. Ms. Diaz stated that when Petitioner came home after getting his flu vaccine on October 11, 2017, he had a bandage on his right shoulder. Ex. 9 at ¶ 3. "[A] few days" after receiving the vaccine, he began to complain that his right arm pain from the injection had not subsided. *Id.* at ¶ 4. He could not lift his arm or sleep on his right side. *Id.* After about a week, he returned to the pharmacy to report his concerns, and was told that the pain would eventually subside. *Id.* at ¶ 5. However, his pain and limited mobility continued for months, leading Petitioner to realize it would not resolve without medical intervention. *Id.*

Petitioner filed a declaration from Dawn Tyler, his coworker at Target Optical, which whom he shares a desk. Ex. 12. Ms. Tyler stated that a day or two after Mr. Diaz's vaccination he began complaining of right shoulder pain. *Id.* at ¶ 3. Petitioner is right handed, and she noted that he became increasingly concerned that his pain was interfering with his daily activities. *Id.*

### C.  The Parties' Arguments

Petitioner relies on Exhibit 15, as well as treatment records and testimony in the form of affidavits and declarations, to establish his right arm as situs of vaccine administration. Petitioner's Brief in Support of Motion for a Ruling on the Record, filed Oct. 18, 2023, at *2 (ECF No.42) ("Br."). The sole mention of a left shoulder administration situs is "the computer-generated immunization history provided by CVS Pharmacy." Br. at *7. But, Petitioner argues, this kind of administration record does not contain information supplied to facilitate diagnosis and treatment, and therefore should not benefit from the presumption of accuracy given to typical treatment records. *Id.* Indeed, administration records are created without input or verification from the patient, and cannot always be taken at face value. *Id.*

In addition, Petitioner notes that the vaccine consent form (Ex. 15) "features a hand-written correction to the site of vaccine administration which was signed by the pharmacist . . . a disinterested party to this matter." Br. at *7. Petitioner views this notation as "cast[ing] significant doubt onto the validity of the site listed on the computer-generated vaccination record and effectively weaken[ing] the evidentiary weight of the record itself." *Id.* at *7-8. The remaining treatment records are consistent, however, mentioning Petitioner's right shoulder injury in the context of his flu vaccination. *Id.* at *8. No other evidence suggests that the flu vaccine was administered in Petitioner's left deltoid. *Id.*

Affidavit and declaration evidence from Petitioner's wife and coworker further support a finding that the vaccine was administered in Petitioner's right deltoid. *Id.*

As to the onset of his shoulder pain, Petitioner argues that the "collective evidence suggests that Petitioner experienced immediate, post-vaccination pain that lasted several days following the immunization and continued to worsen for weeks and then months." Br. at *10. Although he did not seek medical attention for his shoulder pain until three months later, he also did not see any medical provider for any other ailment during that interim period. *Id.* at *9-10. And a delay in treatment does not necessarily defeat a Table SIRVA claim, citing *Winkle v. Sec'y of Health & Human Servs.*, No. 20-0485V, 2021 WL 2808993 (Fed. Cl. Spec. Mstr. June 3, 2021). Petitioner argues that it is not required that a petitioner specify the date of vaccination when reporting onset of pain. Br. at *11 (citing *Williams v. Sec'y of Health & Human Servs.*, No. 17-1046V, 2020 WL 3579763, at *5 (Fed. Cl. Spec. Mstr. Apr. 1, 2020). He thus maintains that he has established the remaining criteria for a Table SIRVA claim, as well as all statutory requirements, and I should therefore rule that he is entitled to compensation. Br. at *9-13.

Respondent counters that Petitioner has failed to present persuasive evidence that he received the flu vaccine in his right arm. Respondent's Response to Petitioner's Motion, filed Oct 13, 2022, at *11-12 (ECF No. 40) ("Resp."). Petitioner's situs allegations are not supported by contemporaneous medical records, and are contradicted by the vaccination record. *Id.* Respondent notes that the vaccination record filed as Exhibit 1 is certified, while the vaccination records filed as Exhibits 14 and 15 are not, nor were they produced in response to the subpoena. *Id.* at *12. Instead, they were filed by Petitioner without an affidavit or other statement from any individual or CVS pharmacy representative explaining the alterations to the records. *Id.* at *12-13.

Respondent also distinguishes cases cited by Petitioner, asserting that the vaccine records in this case "do not appear to be the product of a computer-generated record created from 'drop-down' menus," as was present in the cases Petitioner cites. Resp. at *13. He instead points to other cases in which petitioners presented additional evidence, including a statement from the pharmacist who administered the vaccine, in support of their position that the vaccination record was incorrect. Resp. at *13. Here, Petitioner has not filed "objective evidence" supporting his assertions, and the altered vaccination records filed by Petitioner "are not reliable evidence." *Id.* at *13-14. Petitioner has not presented any evidence from CVS, Michelle Kososki, Christy LaPlante, or the male pharmacist mentioned in his affidavit that would explain the change in vaccination situs on Exhibits 14 and 15. *Id.* at *14. Respondent also argues that Petitioner has not stated

9

when he received the first altered record, or explained why the altered records were not filed with the petition. *Id*. Moreover, Petitioner has not provided objective evidence that the handwritten edits to Exhibits 14 and 15 were actually made by "Michelle." *Id*. The two records that are consistent with each other are Exhibits 1 and 13. *Id*. at *15. Exhibit 1 contains a certificate of authenticity, while Exhibit 13 was produced pursuant to a court order. *Id*.

Respondent acknowledges that subsequent medical records do memorialize a reported correlation between Petitioner's flu vaccine and the development of his right shoulder pain (thus corroborating a right arm situs of administration), but argues that "those records appear to be based solely on the histories provided by petitioner." Resp. at *16. As such, Respondent views such evidence as being "based on petitioner's assertion alone," suggesting that this falls within the prohibition on a special master making a finding of entitlement to compensation based on a petitioner's claims alone, unsubstantiated by medical records pursuant to Section 13(a)(1). *Id*.

Respondent also argues that Petitioner has failed to demonstrate that the onset of his symptoms occurred within 48 hours of vaccination. Resp. at *16. Petitioner first reported his injury three months and eleven days after vaccination, at which time he "was vague as to the timing of the onset of his symptoms." *Id*. at *16-17. Respondent adds that the impression of Petitioner's treating physician was that it could have been a coincidence that he received the vaccine in his right arm and later experienced pain in that arm. *Id*. at *17. Respondent argues that "[n]o additional medical documentation provided by petitioner specifically identifies the timing of the onset of petitioner's right shoulder pain relative to petitioner's vaccination," which in Respondent's view defeats the claim and warrants dismissal. *Id*.

### D. Factual Finding Regarding QAI Criteria for Table SIRVA
#### 1. Situs of Vaccine Administration

It is undisputed that Petitioner received a flu vaccine intramuscularly at a CVS Pharmacy in Connecticut. Br. at *2; Resp. at *5. However, the record contains evidence

that could suggest that the vaccine was administered in either Petitioner's left deltoid or his right deltoid.

Two vaccine records state that the vaccine was administered in Petitioner's left deltoid. One of these is a certified record, while the other was produced in response to a subpoena. Exs. 1, 13. And there are two vaccine records that appear to have *originally* stated the vaccine was administered in Petitioner's left deltoid, but were later altered. Exs. 14, 15. While affidavit evidence asserts these alterations were made by the pharmacist who administered the vaccine, there is nothing from the pharmacist *herself* to this effect. Moreover, the altered records themselves contain additional alterations as to who administered the vaccines.

Given that the purpose of requiring certified records is to ensure that records filed in a case are accurate and complete,[5] I determine that the certified vaccine record – Exhibit 1 – should be given somewhat more weight than the other vaccine records. But that does not mean this specific document is definitively correct. I still must weigh *all* of the evidence and determine what conclusion is supported by a preponderance.

Here, several pieces of evidence in Petitioner's treatment records and affidavit and declaration evidence support a finding that the October 11, 2017 flu vaccine was administered in Petitioner's right arm, as he alleges, while only Exhibits 1 and 13 suggest that it was not. Thus, when Petitioner first sought care for his right shoulder pain, he reported that the pain began after his October flu shot. Ex. 3 at 22. At his first orthopedist appointment, he again related his right shoulder pain to his October 11, 2017 flu shot. Ex. 3 at 112. And at his PT evaluation for right shoulder pain, he reported an injury date of October 11, 2017 and stated that the onset of his pain occurred after a flu shot. Ex. 5 at 57.

In addition, Petitioner's witness statements provide some additional details about the circumstances of the vaccination. Petitioner has maintained that the pharmacist who administered the vaccine asked which arm he preferred, and he chose the right arm. Ex. 16 at ¶ 2. He further explained that the vaccine was injected into his right arm at an awkward angle, and higher than he thought it should have been. Ex. 8 at ¶ 2; Ex. 16 at

---

[5] Vaccine Guidelines, Section II, Ch.3 (A), available at
https://www.uscfc.uscourts.gov/sites/default/files/Guidelines-4.24.2020.pdf (visited Nov. 1, 2023).

11

¶ 3. And Petitioner's wife stated that when he came home on the day of his flu shot, he had a bandage on his right shoulder. Ex. 9 at ¶ 3.

Together, the treatment records and affidavit evidence are sufficient to outweigh the certified vaccine record, and I find that they preponderantly establish that, more likely than not, the flu vaccine was administered into Petitioner's right arm. This finding is not based on Petitioner's claims alone, as they are supported by medical records. Ultimately, the fact that the first temporal record sets forth a situs contrary to the Petitioner's allegations does not mean it deserves the most weight – and enough other trustworthy evidence (discounting the corrected or uncertified records) exists in support of Petitioner's situs argument to accept it as preponderantly supported.

### 2. Onset

After a review of the entire record, I find, based on a preponderance of the evidence, that more likely than not the onset of Petitioner's shoulder pain began on the day of vaccination, which is well within the time required for a Table SIRVA. When Mr. Diaz first sought medical care for his shoulder, he related his right upper arm pain to his October flu shot. Ex. 3 at 22. He told his orthopedist that his right shoulder pain began on October 11, 2017 – the date of vaccination – after his flu shot. Ex. 3 at 112. At Petitioner's PT evaluation, he reported an injury date of October 11, 2017 and stated that the onset of his pain occurred after a flu shot. Ex. 5 at 57.

Petitioner stated that he had immediate pain and discomfort in his right arm. Ex. 8 at ¶ 4. About a week after vaccination, he spoke to the pharmacist about his shoulder pain, and was told that some people have residual soreness but that it would eventually subside. *Id.* About a month after his vaccination, he informally consulted a doctor at his workplace, who told him that the doctor's father had a similar problem and it took a long time to go away. *Id.* at ¶ 5. Petitioner's wife states that a few days after vaccination, Mr. Diaz started to complain that the pain had not subsided – which suggests that the pain was present before that time, and had not gone away as expected. Ex. 9 at ¶ 3. And Petitioner's coworker stated that he began complaining of right shoulder pain about a day or two after vaccination. Ex. 12 at ¶ 3.

While Petitioner delayed seeking care for over three months after vaccination, this is not uncommon in SIRVA cases, and he has provided a reasonable explanation for the delay – that he informally consulted with the pharmacist and a doctor, both of whom told

him that it may take time for the pain to go away. (He also did not in that intervening time seek other medical care – and thus the record in this case does not establish instances in which he could have obtained medical assistance for his shoulder injury). A treatment delay does not *per se* outweigh the other evidence supporting a finding that the onset of Petitioner's right shoulder pain occurred on the day of vaccination. *See Buck v. Sec'y of Health & Human Servs.*, No. 19-1301V, 2023 WL 6213423, at *7 (Fed. Cl. Spec. Mstr. Aug. 23, 2023) (finding onset of pain occurred within 48 hours where the petitioner did not seek care for over three months and noting that a delay in seeking care is relevant to onset, but not dispositive).

### 3. Other SIRVA QAI Criteria

Respondent does not contest the remaining SIRVA QAI criteria, and I find that the record contains preponderant evidence that they are satisfied. Petitioner did not have a history of right arm pain or injury prior to vaccination that would explain his symptoms after vaccination. *See* Exs. 3 at 1; 11 at 6-8. His pain and reduced range of motion were limited to his right shoulder, where the flu vaccine was administered, and no other condition or abnormality has been identified that would explain his post-vaccination symptoms. *See* Exs. 3 at 112-13; 4 at 22; 11 at 9-10.

### E. Other Requirements for Entitlement

The record contains preponderant evidence that other requirements for entitlement are satisfied as well. Petitioner received a covered vaccine in the United States. Ex. 1 at 3; 15 at 1-3. He experienced the residual effects of his condition for more than six months. Ex. 3 at 93. He averred that he has not previously collected an award or settlement of a civil action for damages, and there are no civil actions pending. Ex. 8 at ¶ 9.

## Conclusion

Based on my review of the record as a whole, I find that it is more likely than not that Petitioner's October 11, 2017 flu vaccine was administered in his right arm and the onset of Petitioner's shoulder pain occurred on the day of vaccination. I find that all other SIRVA Table requirements are met, as are other requirements for entitlement. Therefore, Petitioner's motion for a ruling on the record that he is entitled to compensation is **<u>GRANTED</u>**.

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master
